UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 06-10116-RGS

UNITED STATES OF AMERICA

v.

ROBERT PROSPERI, GREGORY STEVENSON,
GERARD MCNALLY, MARC J. BLAIS,
JOHN J. FARRAR, and KEITH THOMAS

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION TO DISMISS
THE 18 U.S.C. § 1020 COUNTS

November 21, 2007

STEARNS, D.J.

Defendants are charged with various crimes related to the construction of the Central Artery Tunnel Project (CA/T). The initial indictment was returned on May 3, 2006. A superseding indictment was returned on June 28, 2006. The superseding indictment charges the defendants with conspiracy to commit highway project and mail fraud, 18 U.S.C. § 371, conspiracy to defraud the government with respect to claims, 18 U.S.C. § 286, and multiple counts of highway project fraud, 18 U.S.C. § 1020, and mail fraud, 18 U.S.C. § 1341. Defendants seek to dismiss all counts alleging a violation of section 1020. Specifically, they argue that section 1020 is unconstitutionally vague and lacking in a federal nexus.

BACKGROUND

The CA/T project, colloquially known as the Big Dig, is a multi-billion dollar interstate highway construction project. The CA/T built or reconstructed nearly eight miles

of urban highway slicing through the City of Boston, nearly half of it underground. A major part of the undertaking involved the construction of tunnel walls, base slabs, and roof slabs made, in whole or in part, from concrete. The project specifications generally prohibited the addition of water to the concrete after it was mixed or "batched." The specifications also required that the concrete be installed within ninety minutes of the batching process. To ensure compliance with the ninety minute rule, contractors were required to produce batch reports for each truckload of concrete. The reports included, among other things, the date and time of the batching.

Defendants are former employees of Aggregate Industries, N.E., a concrete supplier to the CA/T. They are accused of recycling concrete that was over ninety minutes old, using concrete that had been adulterated by the addition of excess water, and submitting false batch reports to conceal their fraudulent activities. Approximately 5,000 of the nearly 500,000 concrete loads that Aggregate delivered to the CA/T are alleged to have been out-of-specification.

## DISCUSSION

Section 1020 criminalizes the making of knowingly false statements, representations, and/or reports concerning the character, quality, and cost of material provided to a federal highway project. Defendants argue that as applied to the allegedly false statements they made regarding the "character" and "quality" of the concrete supplied by Aggregate, the statute is void for vagueness. See Kolender v. United States, 461 U.S. 352, 357 (1983) ("[T]he void-for-vagueness doctrine requires that a penal statute define [a] criminal offense with sufficient definiteness that ordinary people understand what

conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.").

According to defendants, no reasonable person in their circumstances would have anticipated being prosecuted for false statements relating to individual truckloads of concrete when the final product, considered as a whole, met contractual standards.  In other words, since the whole pour of intermingled concrete met specifications (at least according to defendants), it is of no matter that individual truck loads of concrete were non-conforming.  The argument strains logic.  Defendants submitted documents that falsely reported material facts that were required and clearly specified by the CA/T contract.  If a contractor for a federal highway project knowingly delivers material out of specification, section 1020 applies.  See, e.g., United States v. Clark, 193 Fed. Appx. 562 (6th Cir. 2006) (conviction of contractor that made knowing misstatements concerning the quality of surface preparation and steel blasting of a bridge).  Cf. United States v. Bras, 483 F.3d 102, 104-105 (D.C. Cir. 2007) (construction superintendent convicted of conspiring to commit bribery and highway project fraud by paying municipal employees to accept false asphalt tickets that reflected tons of asphalt never actually delivered to roadway job sites, thereby overcharging the municipal agency for unfurnished material); United States v. Photogrammetric Data Servs., Inc., 103 F. Supp. 2d 875, 876 (E.D. Va. 2000) (corporation and its manager convicted of committing highway project fraud by submitting inflated invoices for subcontracting work to firms contracted by a state department of transportation for the purpose of highway construction).

That the allegedly false statements relate to individual truck loads instead of the whole pour is a meaningless distinction. As an initial matter, a whole pour is nothing more than an accumulation of individual batches of concrete. While defendants may think that the whole is greater than its parts, the government surely has the right to define the sum of any parts for which it contracts and pays. Moreover, the contract specifications that defendants are alleged to have violated speak in terms of individual loads and not the whole pour. Therefore, defendants' claims of inadequate notice are unavailing.

Defendants further argue that the statute fails to establish minimal guidelines to protect against arbitrary enforcement because the statute criminalizes "any" false statement or representation as to character and quality and could therefore lead to the criminalization of *de minimis*, non-material statements. They point to this indictment as a prime example of improper exercise of prosecutorial discretion because the allegedly non-conforming loads of concrete amounted to but one percent of the total delivered by Aggregate. Defendants miss the point. The use of the word "any" embodies Congress's intent to create a total ban on the knowing fabrication of misleading statements relating to highway contracts. Allowing contractors a "little bit" of misrepresentation would lead precisely to the vague and arbitrary enforcement that defendants bemoan and that Congress intended to avoid.

Defendants also unconvincingly argue that section 1020 is unconstitutional because it lacks a sufficient federal nexus. Specifically, they claim that their false statements regarding the character and quality of the concrete has absolutely nothing to do with the administration and expenditure of federal highway funds. But, far from being a "local

highway project," as defendants portray it, the Big Dig is the largest and most expensive highway and tunnel project ever undertaken in the United States. The loads of non-conforming concrete delivered by defendants are now part of two interstate federal highways (Interstate 90 and Interstate 93). The project was authorized by Congress through the Surface Transportation and Uniform Relocation Assistance Act of 1987, Pub. L. No. 100-17, 101 Stat. 170 (1987), and the Intermodal Surface Transportation Efficiency Act, Pub. L. 102-240, 105 Stat. 1914 (1991). All of the contracts that figure in the superseding indictment were approved by the Secretary of Transportation through the Federal Highway Administration (FHA). At project's end, the FHA will have injected approximately $8.549 billion of federal funds into the CA/T. A portion of that amount funded the contracts now at issue. It is beyond dispute that "the federal government has a patently obvious interest in insuring that federal funds, once distributed, are properly administered. Thus, a false statement made in relation to a highway or related project, may fall within the ambit of § 1020: even when it is not submitted to a federal agency directly and the federal agency's role is limited to financial support of a program it does not itself directly administer." Photogrammetric Data, 103 F. Supp. 2d at 879-880 (internal citations omitted). Therefore, the requirement of a federal nexus is met.

## ORDER

For the foregoing reasons, the motion to dismiss the section 1020 counts is DENIED.

SO ORDERED.

/s/ Richard G. Stearns

5

_____
UNITED STATES DISTRICT JUDGE